IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TYRUS S.,

          Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

CIVIL ACTION FILE NO.

4:17-CV-0237-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied his disability

application.   For the reasons set forth below, the court **ORDERS** that the

Commissioner's decision be **REVERSED** and that the case be **REMANDED** for

further proceedings.

## I.    Procedural History

Plaintiff filed applications for supplemental security income in June 2010 and

February 2012, alleging that he became disabled on June 29, 2010.  [Record ("R.") at

103-13, 389, 766-74].   After numerous administrative and judicial proceedings,

including denials, hearings, and remands, Plaintiff's pending claims were consolidated and a final administrative hearing was held on January 9, 2015. [R. at 389, 408-40]. The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's application on June 26, 2015. [R. at 389-400]. Plaintiff filed exceptions to the decision on August 24, 2015, but the Appeals Council found that the exceptions were not timely and subsequently denied a request for an extension of time to file a civil action. [R. at 366-70, 379-81]. Plaintiff filed his complaint in this court on October 10, 2017, seeking judicial review of the Commissioner's final decision. [Doc. 1]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Facts

The ALJ found that Plaintiff has schizophrenia, learning disorder, anxiety disorder, and cannabis dependence. [R. at 391]. Although these impairments are "severe" within the meaning of the Social Security regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 392-94]. Plaintiff has no past relevant work, but the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [R. at 398-99]. As a result, the ALJ concluded that Plaintiff

2

has not been under a disability since June 29, 2010, the date the application was filed. [R. at 399].

The decision of the ALJ [R. at 389-400] states the relevant facts of this case as modified herein as follows:

The claimant is able to take care of his personal hygiene and needs. He is able to prepare his own beverages and meals such as coffee, sandwiches, and other simple meals that could be prepared in a microwave oven. He keeps his room clean, washes dishes, cleans bathrooms, and completes his own laundry without prompting or assistance. (Testimony; Exhibit 16F at 7). He does not shop independently and currently does not drive because he let his driver's license permit expire. The claimant spends his daytime hours watching television, listening to music, using the computer, or sleeping. (Exhibit 5F at 2, 3; Exhibit 5E). He helps his mother and grandmother with most household tasks.

The claimant is able to tolerate crowded and noisy places when on medication. He said that when he is non-compliant with medication, crowds and noise bother him. He has no close friends, and he is unable to be around most of his male friends because of a history of drug use and legal issues. However, the claimant enjoys spending time with female friends and family members. (Testimony; Exhibit 16F at 7). He

occasionally attends church service. He thinks that male friends are jealous of him. When he is not taking his medication, he thinks that others can see his thoughts and psychological state. The claimant's mother reported that his self-isolation includes staying in his bedroom "moping" all day; however, she reported that these symptoms improve with medication. (Exhibit 5F at 2-3).

The claimant was admitted for inpatient treatment due to schizophrenia symptoms in November 2009 and May 2010 when he stopped psychotropic medications without a doctor's approval and was using illicit drugs. The claimant admitted to using cocaine four days prior to the May 2010 exacerbation, but urinary drug screens were inconclusive. (Exhibit 2F at 16). In April 2013, he received inpatient treatment after decompensating while using illicit drugs. (Exhibits 18F and 19F). The claimant's condition was stable at discharge with diagnoses of paranoid schizophrenia, cannabis abuse, and ruled out drug-induced psychosis. (Exhibit 3F at 2-5; Exhibit 19F). He has never received and has refused specific treatment to address his substance abuse. (Exhibit 22F).

The claimant indicated that he last drank alcohol in 2010 and last used illicit drugs in 2009. In the past, he held a few part-time jobs as a restaurant cook and warehouse stocker. The claimant stated that he could dress and bathe himself and

microwave food.  He is able to vacuum the house and help his grandmother with other household chores.  He is able to watch television, read newspapers, use the computer, and engage in conversation with family members and relatives.  He is interested in local professional sport teams such as the Falcons and the Braves, and he likes to watch televised games.  He attends doctor's visits, dines at restaurants, goes to stores and movie theaters, visits family at events, and hosts people when they visit him.  The claimant contends that he has panic attacks about three to four times per week that last for 30 minutes to one hour.  He also claims auditory hallucinations.  However, he indicated that his medication helps with those symptoms.  The claimant takes his medication in the morning, around 9:00 a.m., and does not hear voices until the end of the day.  He indicated that there are times when he cannot afford his medication which costs about $58.00 per month.

Treatment records from Peachford Behavioral Hospital show that the claimant received inpatient mental health treatment in November 2009.  The claimant was paranoid, agitated, and anxious, but he admitted using methamphetamine and marijuana prior to developing symptoms. The claimant's symptoms improved, and he was discharged in stable condition with recommendations for Seroquel, Risperdal, and Vistaril.  (Exhibit B1F).

5

Progress notes from Asha Pandya, M.D., the claimant's treating psychiatrist at Cobb Behavioral Health, show good response and symptom control while following the prescribed medication treatment, including Seroquel, Invega, and Vistaril from 2010 through 2013. Further records show that the claimant's condition remains stable even despite non-compliance issues, including not taking medicines consistently and using illicit drugs. (Exhibits 11F, 15F, 17F, 20F, 21F, and 23F).

Additional records from Highland Rivers Mental Health show no significant medication adjustments during the April 2013 inpatient treatment when the claimant decompensated after using illicit drugs. (Exhibits 18F and 19F). Subsequent records from November 2013 show that the claimant admitted to using cocaine several months prior but that he refused further treatment to address his ongoing substance abuse. (Exhibit 22F at 6).

A psychological consultative evaluation completed in August 2012 by Thomas Earles, Ph.D., shows that Invega, Celexa, and Seroquel control 90% of the claimant's psychological symptoms. The claimant admitted missing medication about six times per year and, when this happens, that he notices rapid onset of psychological symptoms. The claimant's mother reported that she sees a huge difference in the claimant's behavior when he is on medication. (Exhibit 16F).

AO 72A

(Rev.8/82)

In December 2012, the claimant reported that he is able to ignore voices and he was discharged with a global assessment of functioning of 60. (Exhibits 17F, 19F). He also stated in June 2013, "When I am on my medication, I can ignore [voices]." (Exhibit 20F). In 2013, the claimant was hospitalized when he ran out of medications and was using illicit drugs, but the records note that he was "back on medication and feeling fine." (Exhibit 21F).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III. Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1440. "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his disability. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step

8

one, the claimant must prove that he has not engaged in substantial gainful activity. See id. The claimant must establish at step two that he is suffering from a severe impairment or combination of impairments. See id. At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience. See id. "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work." Doughty, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work." Id. If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.  Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant has not engaged in substantial gainful activity since June 29, 2010, the application date. (20 C.F.R. § 416.971, *et seq.*).

2.  The claimant has the following severe impairments: schizophrenia, learning disorder, anxiety disorder, and cannabis dependence. (20 C.F.R. § 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4.  The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations. The claimant is able to perform simple, routine, repetitive tasks, can concentrate and persist for two-hour segments, and is able to handle occasional changes in work setting and occasional interaction with co-workers and the public. The claimant is unable to meet fast-paced, high production demands.

5.  The claimant has no past relevant work. (20 C.F.R. § 416.965).

6.  The claimant was born on November 14, 1990, and was 19 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (20 C.F.R. § 416.963).

7.  The claimant has a limited education and is able to communicate in English. (20 C.F.R. § 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work. (20 C.F.R. § 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 416.969 and 416.969(a)).

AO 72A

(Rev.8/82)

10.   The claimant has not been under a disability, as defined in the Social Security Act, since June 29, 2010, the date the application was filed.  (20 C.F.R. § 416.920(g)).

[R. at 391-99].

## V.   Discussion

Plaintiff argues that the ALJ's decision denying his disability applications should be reversed.  [Doc. 33].  Plaintiff's primary argument is that the ALJ committed reversible error when he evaluated the opinion from Dr. Asha Pandya, Plaintiff's long-time treating psychiatrist.  [Id. at 7-21].  According to Plaintiff, the ALJ also erred because his finding at step five of the sequential evaluation is not supported by substantial evidence.  [Id. at 21].  Finally, Plaintiff contends that the ALJ did not properly consider the opinion from Dr. Thomas Earles, a consulting psychologist.  [Id. at 22-24].  For the reasons discussed *infra*, the court finds that the decision of the ALJ was not supported by substantial evidence and was the result of a failure to apply the proper legal standards.

The record reveals that Plaintiff saw Dr. Pandya for treatment on a regular and frequent basis for many years beginning in 2010.  [R. at 286-89, 296-300, 305-07, 874-79, 895-906, 910-15, 1095, 1098].  In December 2010, Dr. Pandya completed a "Mental Impairment Questionnaire," in which she stated that Plaintiff has normal

AO 72A
(Rev.8/82)

orientation, normal thought processes, normal thought content, and normal flow of mental activity. [R. at 305]. Dr. Pandya also found that Plaintiff has no suicidal/homicidal ideation and normal ability to understand, remember, and carry out simple instructions. [R. at 306]. In addition, the treating psychiatrist found that Plaintiff has: psychotic signs or symptoms in the form of auditory hallucinations; abnormal affect and mood (blunted affect); abnormal ability to get along with the public, supervisors, and co-workers; abnormal ability to deal with changes in the work setting; and paranoid delusions. [R. at 305-07]. Finally, Dr. Pandya opined that Plaintiff has low stress tolerance and is not stable even when on medications. [R. at 307].

Because the determination about whether a claimant has met the statutory definition of disability is reserved to the Commissioner, a medical source's opinion that a claimant is disabled is not controlling. See 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the relevant regulations promulgated by the Administration state in pertinent part:

> (2)    Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective

12

> medical findings alone or from reports of individual examinations. . . .
>
> > (i)  Generally, the longer a treating source has treated you . . . the more weight we will give to the source's medical opinion. . . .

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating source's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. If the treating source's opinion is not given controlling weight, then the Commissioner is required to apply the following six factors in determining the weight to give the opinion: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

The Eleventh Circuit has consistently held that opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner unless good cause exists to discredit these opinions. See Lewis, 125 F.3d at 1440; Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985). "Good cause exists 'when the: (1)

treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting Phillips, 357 F.3d at 1241). An ALJ may disregard a treating physician's opinion with good cause, but his reasons for doing so must be clearly articulated in his decision. Id.

In the present case, the court finds that the ALJ has failed to show that there was good cause to reject the opinions of treating psychiatrist Dr. Pandya. The ALJ did not clearly articulate his reasons for giving little weight to Dr. Pandya's opinions. Instead, the ALJ's discussion of the evidence and his proffered reasons for disregarding the treating psychiatrist's opinions are confusing and contradictory, and the court is unable to follow the ALJ's line of thought.

The ALJ wrote that he "gives great weight to reports and opinions from Dr. Pandya showing no significant exertional limitations and only abnormal ability getting along with others." [R. at 396]. Because the ALJ did not provide a citation, the undersigned searched for "reports and opinions" which contained the limitations described by the ALJ. The court was not able to locate any reports and opinions from Dr. Pandya regarding Plaintiff's exertional limitations, and finding such evidence

would not be expected because Dr. Pandya is a psychiatrist. With regard to a statement from Dr. Pandya opining that Plaintiff has "only abnormal ability getting along with others," the parties have pointed to the "Mental Impairment Questionnaire" completed by the treating psychiatrist in December 2010 which is labeled "Exhibit 7F." [R. at 305-07]. Consistent with the ALJ's statement, Dr. Pandya opined in Exhibit 7F that Plaintiff has an abnormal ability, but not a markedly abnormal ability, to "get along with the public, with supervisors and with co-workers." [R. at 307]. Despite Plaintiff's difficulties in getting along with others, as the ALJ pointed out, Dr. Pandya's opinion was that Plaintiff's "limitation was not at a level as to warrant a total inability relating to co-workers, supervisors, or the public in the social skills category." [R. at 396]. As discussed *supra*, the December 2010 Mental Impairment Questionnaire (Exhibit 7F) also reveals that Dr. Pandya opined that Plaintiff has "low stress tolerance" and an abnormal ability to deal with changes in the work setting. [R. at 307]. Consistent with Exhibit 7F, the ALJ wrote that he adopted Dr. Pandya's opinion into his RFC assessment, which limits Plaintiff to "occasional handling of changes in work settings, occasional interaction with co-workers and the public, and avoidance of fast-paced, high production work environments." [R. at 394, 396]. The ALJ's

15

discussion of his RFC assessment confirms that he gave "great weight" to Exhibit 7F

from Dr. Pandya. [R. at 306-07, 394, 396-97].

In the next paragraph of the ALJ's decision, he wrote that he "gives less weight

to Dr. Pandya's reports showing that difficulties relating with others would prevent the

claimant from 'holding a meaningful job.'" [R. at 397]. The ALJ cited to Exhibits 26F

and 27F which consist of two identical letters "to whom it may concern" from Dr.

Pandya. [R. at 1095, 1098]. The opinion letters are undated, but, as the Commissioner

notes, it appears that they were faxed to the Social Security Administration on January

9, 2015. [Doc. 36 at 7 n.5; R. at 1095, 1098]. In the identical letters, Dr. Pandya

wrote, *inter alia*:

> [Plaintiff] has been under my care since 2010. He has history of
> Schizophrenia Paranoid type. He has been compliant with his treatment.
> In spite of medications he continues to have great difficulty being around
> people and trusting others because of his chronic paranoia. Because of
> that in my opinion he is not able to hold a meaningful job.

[R. at 1095, 1098]. The ALJ wrote that one of the reasons that he gave "less weight"

to Dr. Pandya's letters is that they are "a generalized assessment." [R. at 397]. The

ALJ also wrote that Plaintiff "dines at restaurants, goes to movies and attends family

social functions which shows he does relate with other persons." [Id.]. The ALJ made

a similar statement a few sentences later when he wrote that Plaintiff "stated that he

16

is able to go to the stores, to the movies, to church, and to restaurants, which normally have large crowds." [Id.].

The confusing part of the ALJ's evaluation of Dr. Pandya's opinions is that in the same paragraph of the ALJ's decision where he discussed the psychiatrist's January 2015 letters, the ALJ wrote that he "gives little weight to Dr. Pandya's medical source statement at Exhibit 7F [the December 2010 Mental Impairment Questionnaire] because it is not consistent with medical records showing [Plaintiff's] condition is well controlled when taking medications." [R. at 305-07, 397]. Although the ALJ wrote that he gave "little weight" to Dr. Pandya's "statement" at Exhibit 7F, the undersigned initially thought that the ALJ was referring to Dr. Pandya's January 2015 opinion letter at Exhibit 27F and that he simply mistyped "7F" because the context of the paragraph reveals that the ALJ was primarily discussing Exhibits 26F and 27F. [R. at 397]. But immediately following the ALJ's sentence about giving "little weight to Dr. Pandya's medical source statement at Exhibit 7F," the ALJ wrote that "Dr. Pandya's statement makes only 'abnormal' and not 'marked' findings." [R. at 397]. Exhibit 7F includes a number of findings from Dr. Pandya that she labels as "abnormal" and not "markedly abnormal," while Exhibit 27F does not say anything about "abnormal" findings. [R. at 305-07, 1098]. In light of these facts, it is apparent that the ALJ did not make a

misstatement when he wrote that he gave "little weight to Dr. Pandya's medical source statement at Exhibit 7F." [R. at 397].

The ALJ, however, made a conflicting statement in another part of his decision. As previously noted, the ALJ stated that he gave "great weight" to Dr. Pandya's opinion at Exhibit 7F. [R. at 396]. Dr. Pandya stated in Exhibit 7F that Plaintiff has abnormal affect and mood (blunted affect), psychotic signs or symptoms in the form of auditory hallucinations, abnormal ability to get along with others, abnormal ability to deal with work changes, paranoid delusions, and low stress tolerance. [R. at 305-07]. Dr. Pandya also wrote in Exhibit 7F that Plaintiff is not stable even when on medications. [R. at 307]. The Commissioner writes that "the ALJ properly explained that he granted Dr. Pandya's December 2010 opinion great weight because it was consistent with Plaintiff's medical records." [Doc. 36 at 7]. While the Commissioner is correct that the ALJ gave "great weight" to the psychiatrist's December 2010 opinion (Exhibit 7F), the ALJ also stated that he gave "little weight to Dr. Pandya's medical source statement at Exhibit 7F." [R. at 396-97].

The ALJ has given confusing and contradictory statements about the amount of weight given to the treating psychiatrist's opinions, and the court is unable to understand the ALJ's reasoning. As discussed *supra*, the Eleventh Circuit has held

that opinions of treating physicians must be given substantial or considerable weight unless there is good cause to discredit these opinions. See Lewis, 125 F.3d at 1440. The medical opinions from long-time treating specialists like Dr. Pandya are especially significant. See 20 C.F.R. §§ 404.1527(c), 416.927(c). In light of these facts, the undersigned finds that the ALJ failed to establish good cause for disregarding Dr. Pandya's opinions and that the lack of clarity and contradictory findings in the ALJ's decision do not amount to mere harmless error.

The court also notes that some of the ALJ's proffered reasons for disregarding Dr. Pandya's opinions are not supported by the record. Dr. Pandya found in the December 2010 Mental Impairment Questionnaire (Exhibit 7F) that Plaintiff was not stable even while taking medications. [R. at 307]. The ALJ wrote in his decision that it was reasonable to infer that Plaintiff was not stable due to his "poor compliance with the recommended medication treatment and even occasional illicit drug abuse (several times per month)." [R. at 396]. However, Dr. Pandya explained in her January 2015 opinion letter that Plaintiff "has been compliant with his treatment" and that "in spite of medications he continues to have great difficulty being around people and trusting

others because of his chronic paranoia." [R. at 1095].[1]  The ALJ also wrote in his

decision that Plaintiff reported no longer using cocaine and methamphetamine.  [R. at

399].  In addition, the ALJ found that Plaintiff's occasional "marijuana use has only

a slight or little effect in the claimant's ability to perform competitive work activity at

the medium, unskilled level."  [R. at 399-400].  These facts are not consistent with the

ALJ's assertion that it was reasonable to infer that Plaintiff was not stable due to his

poor compliance and illicit drug abuse.  [R. at 396].

      In sum, the undersigned finds that the ALJ has failed "to provide the reviewing

court with sufficient basis for a determination that proper legal principles have been

followed."  <u>Martin</u>, 894 F.2d at 1529.  Many of the ALJ's reasons for rejecting Dr.

Pandya's opinions are not clearly articulated and are not supported by the record.

Moreover, the ALJ's discussion of the treating psychiatrist's opinions contains

contradictions and is extremely confusing.  The ALJ wrote that he gave both "great

weight" and "little weight" to Dr. Pandya's December 2010 Mental Impairment

Questionnaire (Exhibit 7F).  The ALJ did not have good cause to reject the treating

psychiatrist's opinion, and the ALJ's decision is not supported by substantial evidence.

---

[1]Plaintiff also points to record evidence indicating that Plaintiff's lack of
compliance was not as frequent as the ALJ described it.  [R. at 218, 875, 892, 947,
1199, 1211, 1311; Doc. 33 at 18].

AO 72A

(Rev.8/82)

Accordingly, the undersigned concludes that the ALJ's decision should be reversed and that the case should be remanded.

Because the ALJ's evaluation of the opinions from Dr. Pandya could affect the ALJ's assessment of other issues, the court finds it unnecessary to address Plaintiff's remaining arguments. See Demenech v. Secretary of the Dep't of Health and Human Services, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that most of plaintiff's arguments did not need to be addressed because remand was warranted on a significant issue); Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (finding that it was unnecessary to address most of the issues raised by the plaintiff because they were likely to be reconsidered on remand); Bradley-Bell v. Berryhill, 2019 WL 2480064, at *5 (M.D. Fla. June 13, 2019) ("In light of the above findings, the court need not address Ms. Bradley-Bell's remaining claim of error."); Shaffer v. Comm'r of Social Security, 2015 WL 5604768, at *2 (M.D. Fla. September 23, 2015) ("Because remand is required on the first issue in this case, it is unnecessary to review Plaintiff's second argument."); Walker v. Astrue, 2013 WL 5354213, at *19 n.22 (N.D. Ga. September 24, 2013) ("Because it is recommended that this case be remanded for further proceedings that could impact the ALJ's assessment of claimant and Shaw's credibility, her RFC, and her ability to perform other work in the national

21

economy, the Court need not address the remaining issues raised by the claimant.");

Hall v. Astrue, 2012 WL 2499177, at *4 n.8 (N.D. Ala. June 22, 2012) ("Because

remand is warranted on these grounds, the court need not consider claimant's other

arguments.").  Nevertheless, the court notes that all of the evidence that has been

submitted during the administrative process should be considered upon remand.  See

20 C.F.R. § 404.900(b) (stating that with certain limitations, the Social Security

Administration "will consider at each step of the review process any information you

present as well as all the information in our records").

## VI.    Conclusion

Based on the forgoing reasons and cited authority, the court finds that the

decision of the ALJ was not supported by substantial evidence and was the result of

a failure to apply the proper legal standards.  It is, therefore, **ORDERED** that the

Commissioner's decision be **REVERSED** and that this action be **REMANDED**

pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance

with the above discussion.  The Clerk is **DIRECTED** to enter judgment in favor of

Plaintiff.

**IT IS FURTHER ORDERED** that, in the event past due benefits are awarded

to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of

attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees. Defendant's response, if any, shall be filed no later than thirty days after Plaintiff's attorney serves the motion on Defendant. Plaintiff shall file any reply within ten days of service of Defendant's response.

**SO ORDERED**, this 5th day of August, 2019.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

23